## BOSWELL v. FIRST NATIONAL BANK OF LARAMIE.

PARTNERSHIP—CHATTEL MORTGAGE—POWER OF ATTORNEY TO EX-
ECUTE—ACKNOWLEDGMENT—DISQUALIFYING INTEREST OF OFFICER—
STOCKHOLDER OF CORPORATION—RECORDING—CONSTRUCTIVE NOTICE—
RENEWAL AFFIDAVIT—EVIDENCE—PROOF OF PRIVATE WRITINGS—
SUFFICIENCY OF CERTIFICATE OF ACKNOWLEDGMENT—ATTESTATION OF
INSTRUMENT—SUFFICIENCY—REPLEVIN—PETITION—SUFFICIENCY—
DEMAND — DIRECTING VERDICT — CONSIDERATION OF PARTNERSHIP.
MORTGAGE—VERDICT AND JUDGMENT IN REPLEVIN.

1.  Under the statute declaring it necessary for each member of
    a partnership to execute and acknowledge a chattel mort-
    gage of firm property, a partner, if under no legal disability,
    may, by a duly executed power of attorney, appoint an
    attorney in fact to act for him and in his name in the ex-
    ecution and acknowledgment of such an instrument; and
    a co-partner may be so appointed.

2.  An officer who is financially or beneficially interested in the
    transaction is incompetent to take and certify the ac-
    knowledgment to an instrument.

(6)

3. The interest of a stockholder in a corporation disqualifies him to take an acknowledgment where the corporation is a party to the instrument.

4. Where the disqualifying interest of the officer taking an acknowledgment does not appear on the face of the instrument or certificate, and a defective acknowledgment would not invalidate the instrument between the parties to it, the recording thereof in the proper office operates as constructive notice to subsequent purchasers and others chargeable with record notice.

5. Where a chattel mortgage, which is valid between the parties thereto even without acknowledgment, appears on its face to have been properly and regularly acknowledged, it is entitled to be filed in the proper office, and the record thereof is notice to subsequent purchasers, notwithstanding that the acknowledgment was taken before a stockholder of the mortgagee, a corporation, that fact not appearing by the instrument or certificate of acknowledgment.

6. The fact that an affidavit in renewal of a chattel mortgage was sworn to by an officer of the mortgagee, a corporation, before a stockholder does not prevent its operation as constructive notice, where it does not disclose on its face the interest of the officer who administered and certified to the oath. (But whether a stockholder would be disqualified to certify to such an affidavit is not decided.)

7. By the strict rule of the common law the primary or best evidence of the execution of a deed or other private writing having a subscribing witness is generally the testimony of such witness, if available, or, if not, proof of his handwriting, if that be feasible; if neither be attainable, it is then competent and sufficient to prove the signature of the grantor or maker.

8. Where an attesting witness to an instrument is not within the jurisdiction of the court, he is to be regarded as unavailable, and proof of that fact lets in secondary evidence of execution.

9. Where the execution and attestation of an instrument occurred out of the jurisdiction, it is to be presumed, in the absence of contrary evidence, that the subscribing witness is out of the jurisdiction at the time of the trial, and that proof of his handwriting is not attainable.

10. Because of the presumption where execution and attestation of an instrument occurred out of the jurisdiction, it is not, in such case, incumbent upon the party offering the

instrument to show diligent and unsuccessful search for proof of the handwriting of the subscribing witness, to let in proof of the maker's signature.

11. Whether evidence is satisfactory respecting the absence of a subscribing witness, so as to let in secondary evidence of the execution of the instrument, is chiefly a question for the trial court, which will not be revised on error if there is any testimony tending to show the fact.

12. The execution by each of two non-resident makers of a power of attorney was attested by a separate witness; the acknowledgment of each was taken out of this state and in the state where he resided; it was testified by a witness that one subscribing witness had resided at the same place as the party whose execution he had attested, and that he supposed the other resided where the party did whose execution was attested. *Held,* that the showing of execution and attestation out of the jurisdiction was sufficient, and there being no evidence to indicate that the attesting witness then or had ever resided in the jurisdiction, the presumption that they were unavailable as well as proof of their handwriting followed, and proof of the signatures of the parties to the instrument became admissible.

13. An objection on the trial that the proof fails to show inability to obtain the testimony of the attesting witness to an offered instrument or proof of their handwriting does not reach the sufficiency of the proof of the genuineness of the maker's signature, so as to entitle an objection on the latter ground to be considered on error.

14. An objection to the form of the attestation by subscribing witnesses to an offered instrument not made on the trial is not entitled to consideration on error.

15. A certificate of acknowledgment to an instrument reciting that the party acknowledged it to be "his free and voluntary act for the uses and purposes therein set forth" is sufficient, without adding the words "and deed" after the word "act."

16. Section 2752, Revised Statutes 1899, declaring the form of acknowledgment therein set out to be sufficient, does not make its use imperative.

17. Under the statute providing that an officer taking an acknowledgment shall indorse upon the instrument a certificate of the acknowledgment thereof and the true date of making the same, a certificate is sufficient stating: "Personally came before me (maker's name), whose name is subscribed to the within instrument, and acknowledged same free and voluntary."

18. Though the statute requires the true date of making an acknowledgment to be stated in the certificate, it is sufficient if the date appears by evidence within the instrument itself.

19. A certificate of acknowledgment is entitled to a liberal construction, and where an omission can be supplied by a reasonable and fair construction of the whole instrument, the certificate will be sufficient.

20. An instrument appearing to have been made and executed July 17, 1891, and acknowledged by one of the makers 'July 21, 1891, it is proper to presume that the acknowledgment of the other maker was made in the same month and year, which is certified as having occurred "this 29th day of July," as against an objection on the ground of an omission of the date.

21. A power of attorney by non-resident partners to a resident and managing co-partner to execute chattel mortgages on the firm property to secure partnership debts then or thereafter existing, executed in 1891, recorded in 1896, under which a chattel mortgage was first executed in 1898, is not objectionable as a stale instrument or on the ground that its revocation was not negatived by proof; since the time of recording such an instrument is not limited by statute or rule of law, the power granted was a continuing one and not limited to a single transaction, the partnership had continued, and revocation by act of the parties during the continuance of the partnership is not to be presumed. ·

22. A firm debt represented by an accommodation note of a third party to the firm indorsed and guaranteed by the latter to the mortgagee is properly secured by a chattel mortgage of partnership property; so held in a replevin suit between the mortgagee and a subsequent purchaser of the mortgaged chattels.

23. In Wyoming replevin is not a local action, and the petition, therefore, need not allege a detention of the property in the county where suit is brought.

24. A petition in replevin is not objectionable for alleging the detention to be "wrongful" instead of "illegal." If wrongful, the detention will be illegal or unlawful in the sense in which those words are applied to the detention of chattels from a plaintiff entitled thereto.

25. A mortgagee of chattels may maintain replevin upon default in the conditions of the mortgage, though he has never had actual possession.

26. Where the mortgagor of chattels is permitted by the mortgage to continue in possession until default, or until the mortgagee shall elect to take possession, a demand before suit is usually essential to render the possession of the mortgagor, or one claiming under him subject to the mortgage, wrongful.

27. Where the original taking was not wrongful, a demand is as a rule necessary to put the right of possession in the plaintiff, but demand or proof thereof may be waived by the previous conduct or assertions of a defendant in possession, or his attitude in the suit showing that a demand would not have been complied with.

28. Demand before suit is excused where it appears by the declaration, conduct, or claims of a defendant in replevin that it would not have been complied with.

29. A claim made by a defendant in replevin either by the pleadings or upon the trial inconsistent with the supposition that he would have complied with a previous demand overthrows the presumption that the property would have been delivered upon demand, and renders proof of demand unnecessary.

30. A claim of ownership by a defendant in replevin excuses proof by plaintiff of previous demand.

31. The filing of a chattel mortgage pursuant to statute is a substitute for the transfer of possession; and the filing of a renewal affidavit has the same effect after maturity.

32. Where, as provided by statute, a chattel mortgage is filed, and continued in force by the filing of renewal affidavits, the mortgagee is not required to take possession of the property upon maturity of the mortgage debt, to preserve the priority of the mortgage lien; and protect his rights against a charge of fraud.

33. The "scintilla · of evidence rule" is not a safe criterion in determining when a verdict may be directed, since it fails to carefully discriminate between the prerogatives of the court and jury, and requires the submission of evidence which might afford no reasonable justification for a verdict.

34. In determining the propriety of directing a verdict, the rule is to be considered that a question of fact must be passed upon by the jury, and a question of law by the court, and that the credibility of witnesses and weight of conflicting testimony are questions of fact.

35. Where the question upon uncontradicted evidence is one of law as to the right of a party to recover a verdict may be directed:

36. Part of the consideration of a partnership chattel mortgage was money advanced upon the credit and note of the firm, to satisfy the indebtedness of another party represented by one firm note and three smaller notes of one of the partners, and the purchase price of certain cattle, the bill of sale having been dated the day following the execution of the mortgage and made out in the name of said individual partner and handed by the seller to the mortgagee; it appeared by uncontradicted testimony that the said partner's individual notes had been given for money borrowed for and on account of the firm, of which he was the managing and resident partner, and that the cattle were purchased by said partner for the firm, who had possession thereof, before the payment of the price and the execution of the mortgage. It did not appear that the said partner directed or knew the bill of sale to be made out in his name. *Held,* (1) that the money was advanced for partnership indebtedness, and was properly secured by the partnership mortgage. (2) That the cattle aforesaid were properly mortgaged as firm property. (3) The question was one of law upon the undisputed facts whether the mortgage attempted to secure a partner's individual debt instead of a debt of the partnership, and in that respect a verdict was properly directed for the plaintiff mortgagee.

37. Where upon a claim of fraud, the testimony of *bona fides* is undisputed, a verdict is properly directed.

38. A purchaser of chattels from a receiver in proceedings supplementary to execution, on a sale to pay the receiver's expenses, takes subject to prior valid and subsisting liens.

39. Section 4158, Revised Statutes 1899, permitting an action of replevin to proceed as one for damages when the property has not been taken, or has been redelivered to defendant for want of an undertaking by plaintiff, does not apply where the defendant has obtained a redelivery upon his giving the undertaking provided for in Section 4151.

40. The plaintiff's undertaking in replevin, when given, stands in the place of the property to the extent of defendant's interest, and the property passes into the exclusive possession and control of the plaintiff.

41. The statute authorizing a defendant in replevin to regain possession upon giving a redelivery bond being silent as to verdict and judgment when plaintiff recovers in the action, the common law applies.

42. The gist of the action in replevin is the wrongful detention, whether the original taking was lawful or unlawful.

43. Where property taken in replevin has been redelivered to the defendant upon his giving the statutory bond to deliver the property to plaintiff if that be adjudged, and to pay all costs and damages awarded against him, the judgment, when plaintiff recovers, should be in the alternative that he recover the property; or in case a delivery cannot be had, that he recover the value thereof.

44. But where a judgment for a return of the property could not have been complied with because of defendant's sale of the property, or a part thereof, a judgment for plaintiff for the value of the property alone will not be disturbed on error.

[Decided December 7, 1907.]              (92 Pac., 624.)
[Rehearing denied February 10, 1908.]    (93 Pac., 661.)

Error to the District Court, Albany County, Hon. David H. Craig, Judge.

The First National Bank of Laramie, Wyoming, brought an action in replevin against N. K. Boswell. The defendant prosecuted error from a judgment for the plaintiff. The facts are stated in the opinion.

*H. V. S. Groesbeck,* for plaintiff in error.

The power of attorney to the co-partner to execute chattel mortgages was inadmissible because improperly attested and acknowledged. The reference by initials to the party whose signature was attested is insufficient. A power of attorney must be executed with the formalities required by law. (22 Ency. L. (2d Ed.), 1086.) Though it permits the mortgaging of chattels only, it should be executed in the same manner as is required in case of a power to convey lands. (State v. Cowhick, 9 Wyo., 93.) The execution of the instrument was not established by sufficient proof, since there was no proof by the witnesses, nor that they were out of the jurisdiction. Every kind of private writing, except ancient documents, must be proved to have been made by the party whose act it purports to be in order to render it properly admissible in evidence. (4 Ency. Ev.,

829, 831; Greenleaf's Ev., Sec. 575; Wigmore's Ev., Sec. 1320; 2 Ency. L. (2d Ed.), 584.) The certificate of acknowledgment must show that the grantor acknowledged the instrument to be his or her act and deed. (1 Ency. L. (2d Ed.), 541.) This was not done in the case of Julia A. Bird, which renders her acknowledgment absolutely worthless. The acknowledgment of William J. Bird is entirely too informal and irregular to be legal, as it appears that he did not acknowledge it as his act or deed or for the uses and purposes therein set forth, which appears to be necessary. Each and every member of a co-partnership must execute and acknowledge a chattel mortgage for and on behalf of the co-partnership. (Sec. 2808, Rev. Stat.) As this was not done in person, Thomas Bird had no right to execute the chattel mortgages forming the basis of this action for the co-partnership of Bird Brothers, and even if he could do it as proxy or under power of attorney, which is extremely doubtful under the plain wording of our statute, it has not been established that he had the right from the other members of the co-partnership to execute the same for them.

But even if the pretended power of attorney was in evidence rightfully, Thomas Bird had no right, power or authority to mortgage any of the firm property to pay the debts of John Bird, not a member of such firm. His note, which Bird Brothers guaranteed, and which was included in the larger mortgage, was executed as a mere cover to the bank in order to save an open violation of the banking laws. John Bird received no consideration for this note.

The petition is insufficient and will not support a judgment in favor of the plaintiff. This is an inquiry always open in an appellate tribunal and for the first time. (A) The petition does not contain an allegation of venue, and this is necessary. (18 Ency. Pl. & Pr., 504, note 4, and 540.) (B) The petition alleges that the defendant "wrongfully" detains in his possession from the plaintiff the goods and chattels therein described. This is clearly insufficient. The

petition must allege that the defendant "unlawfully" detains the property. (18 Ency. Pl. & Pr., 539.) It is true that the affidavit for the order of delivery or writ of replevin need but state that the defendant "wrongfully" detains the property, but in a judgment for plaintiff the jury must assess adequate damages for the illegal (not wrongful) detention. (Rev. Stat., Sec. 4156.) The affidavit for the order of delivery is no part of the petition and does not form part of the pleadings or the issues in the cause. Merely averring that the defendant wrongfully detains the property is a legal conclusion. (2 Bates Pl. & Pr., 700, and cases cited; 24 Ency. L. (2d Ed.), 494.) (C) There is no allegation or proof that the bank ever had actual possession of the property, although a special ownership is averred. A special owner cannot maintain replevin unless he has had actual possession. A special property is not complete until actual delivery. (2 Nash. Pl. & Pr., 837, and cases cited.) The bank should have sought possession or made proper demand therefor before commencing the action.

Under the general denial, the defendant may show title in himself, and, in cases where plaintiff had not actual prior possession, defendant may disprove or dispute plaintiff's title by showing title in a stranger. (Gallick v. Bordeaux (Mont.), 78 Pac. Rep., 583; Dresser v. Leman (Wis.), 100 N. W., 844; 4 Curr. Law, 1289.) In replevin plaintiff must have a special ownership in the property in controversy, or be its owner. He must be entitled to the immediate possession. Defendant must wrongfully and unlawfully detain the same. Plaintiff must recover on the strength of his own title, and the title must be such as to give him the legal right to possession. (Harding v. Eldridge (Mass.), 71 N. E., 115; Beirman v. Riethorne (N. J.), 58 Am., 1083; Robb v. Dobrinske, 14 Okla., 563.) Defendant is not estopped to deny plaintiff's title even though he pleads title in himself, and waives thereby the technical defense that he was not in possession at the commencement

of the action, and the fact that he admits the execution of the instrument under which plaintiff claims does not preclude him from attacking its validity. (Culver v. Randle (Ore.), 78 Pac., 394; Robb v. Dobrinske, 14 Okla., 563; 10 N. W., 844; 91 N. Y. Supp., 552; 101 N. W., 61.) A general denial is sufficient to let in any legal defense, such as paramount title in the defendant or in third person. (Iba v. Central Asso., 5 Wyo., 355; White v. Gemeny, 47 Kan., 741; Aultman v. O'Dowd, 73 Minn., 58; School Dist. v. Schoemaker, 5 Neb., 36; Creighton v. Newton, 5 Neb., 100; Richardson v. Steele, 9 Neb., 483; Woodworth v. Knowlton, 22 Cal., 164; Caldwell v. Bruggerman, 4 Minn., 270; Sparks v. Heritage, 45 Ind., 66; Bailey v. Bayne, 20 Kan., 657; Litchfield v. Hailligan, 48 Ia., 126; 18 Ency. Pl. & Pr., 549; Eaton v. Metz (Cal.), 40 Pac., 947; Street v. Morgan, 67 Pac., 448; Payne v. Mach. Co., 66 Pac., 287; Fuller v. Brownell, 48 Neb., 145; Harvey v. Ivory (Wash.), 77 Pac., 725; Sommerville v. Milling Co., 76 Pac., 243 (Cal.); Anthony v. Carp, 90 Mo. App., 387; Nichols v. Bishop, 70 Pac., 188; Elliott v. Bank, 70 Pac., 421.) A general denial in code pleading admits any general or special matter constituting a defense. (Bank v. Frink (Neb.), 92 N. W., 916; Bayle v. Bayne, 20 Kan., 657; White v. Gemeny, 47 Kan., 741; Ry. Co. v. Gila Co. (Ariz.), 79 Pac., 913; Frunold v. Million, 74 S. W., 419; Janson v. Effey, 10 Ia., 227 (1859); Shadduck v. Stotts, 59 Pac., 39; D'Arcy v. Steuer, 179 Mass., 40; Jones v. McQueen, 13 Utah, 178; Horkey v. Kendall, 73 N. W., 953; Holliday v. McKinne, 22 Fla., 153; Holmberg v. Dan, 21 Kan., 73; Towne v. Sparks, 23 Neb., 142; Cobbey on Replevin, 413, 785, 786; Burchinell v. Butters (Colo. App.), 43 Pac., 459; Best v. Stuart (Neb.), 67 N. W., 881; Conner v. Knott (S. D.), 66 N. W., 461; Wester v. Long, 63 Kan., 876; Thresher Co. v. Pierce, 74 Mo. App., 676; Gibson v. Mozier, 9 Mo., 256; Chamberlain v. Same, 1 Wash., 259; Timp v. Dockman, 32 Wis., 146; Delaney v. Canning, 52 Wis., 266.)

One who is a stockholder, as well as an officer, of a corporation is disqualified to take the acknowledgment of an instrument to which the corporation is a party, or in which it is financially or beneficially interested. (Bank v. Bank, 11 Wyo., 32.) The invalidity of the acknowledgment to the mortgages can be shown under defendant's general denial. If plaintiff be without title defendant may recover though title is not shown in himself. (Wilkins v. Wilson, 2 Hardesty, 117.) The plaintiff must have right to possession as well as title. (Gassell v. Doty, 73 Ill. App., 406; Clark v. West, 23 Mich., 424; Beldin v. Laing, 8 Mich., 500; Collier v. Yearwood, 5 Baxt., 581; Cobbey on Replevin, 785.)

The plea that the mortgages forming the basis of this suit were good as between the parties thereto cannot avail here, as we can show readily that they were void as to creditors; but we were prevented from so showing although it plainly appears and without dispute that the sheriff as receiver had possession of the property at the instance of one of the creditors in existence even before these mortgages were executed.

Proof of demand by plaintiff was necessary. (Wells on Replevin, 347; Rodgers v. Brittain, 39 Mich., 477; Caldwell v. Pray, 41 Mich., 307; 1 Cobbey on Ch. Mort., 453, 482, 737; Murchalter v. Mitchell, 27 S. C., 240; Simmons v. Jenkins, 76 Ill., 479; Keller v. Robinson, 153 Ill., 458; Kellogg v. Olsen, 34 Minn., 103; Black v. Pidgeon, 70 N. J. L., 802; Quinn v. Schmidt, 91 Ill., 84.) A bona fide purchaser of personal property from a wrongful taker is not liable in replevin by the lawful owner without demand first made. (Conner v. Comstock, 17 Ind., 90; Ledbetter v. Embree, 12 Ind. App., 617; Kellogg v. Olson, 34 Minn., 103; Barrott v. Warren, 3 Hill, 348; Millpaugh v. Mitchell, 8 Barb., 333.) Possession must be taken by a chattel mortgagee within a reasonable time, or he will lose his rights against creditors of the mortgagor with liens attaching subsequently to the default and before mortgagee has taken

possession. (5 Ency. L., 1002 (2d Ed.) ; Travis v. Mc-
Cormick, 1 Mont., 148; Cobbey on Ch. Mort., 502.) This
rule ought to be good in case of an innocent purchaser from
a receiver under an order of court.

No title passed to Bird Brothers of the cattle purchased
of Crumrine, the purchase price of which formed the bulk
of the pretended consideration for the first and larger chat-
tel mortgage, as bill of sale was made to Thomas Bird one
day after the execution of the mortgage.

Neither the judgment nor the verdict is sufficient. The
jury should have found that the plaintiff was either the
owner or entitled to possession at the commencement of
the action, and then assessed the damages as are right and
proper. (Rev. Stat., 4156, 4158.) The judgment is not
such as is contemplated by law, as a judgment merely for
the value is improper and illegal. (Hall v. Trust Soc.
(Wash.), 60 Pac., 643; Ulrich v. Conaughey, 63 Neb., 10;
Conklin v. McConley (N. Y.), 41 App. Div., 452.) The
damages assessed were entirely too high, even if plaintiff
should recover at all, and it is believed that the verdict of
the jury in that regard was not based upon the evidence,
but was clearly against the weight of evidence, and that
the verdict was caused by the court erroneously taking from
the jury every issue in the case except the single one of
damages.

*N. E. Corthell,* for defendant in error.

The power of attorney was sufficiently executed. (Mor-
ris v. Linton, 61 Neb., 537.) The presumption is that the
witnesses to an instrument executed in another state reside
there and are beyond the jurisdiction of the trial court. The
certificates of acknowledgment to the power of attorney are
sufficient. (Brunswick, &c., Co. v. Brackett, 37 Minn., 58;
Jackson v. Gilchrist, 16 Johns., 89; Imp. Co. v. Carrigan,
31 N. J. L., 14; Carpenter v. Dexter, 8 Wall., 513; 1 Cyc.,
581, *et seq.*) The John Bird note was a firm obligation and
properly secured as such.

Replevin is a transitory action in this state, so that it is unnecessary to allege the place of detention to support the venue. (R. S., Sec. 3505.) The words "wrongfully" and "unlawfully" are used interchangeably in describing detention in replevin, and either is sufficient in a petition. (Wilhite v. Williams, 41 Kan., 288; Nolan v. Jones, 53 Ia., 357; Adams v. Corriston, 7 Minn., 465; Anderson's L. Dict., 1125; R. S., 4146.) The bank became special owner upon the execution of the mortgage. It became entitled to possession when the condition happened which under the terms of the mortgage gave it that right. Waiving consideration of the question how far, in view of the special defenses pleaded as to the validity of the mortgages, the defendant could avail himself of the objection to the acknowledgments if valid, the evidence offered was immaterial and irrelevant in any event. If there had been no acknowledgment the mortgages would have been valid between the parties. (1 Cyc., 514; Schlessinger v. Cook, 9 Wyo., 256; Matchette v. Wanless, 2 Colo., 169.) Generally an acknowledgment is no part of the contract between the parties, and the instrument is valid without it. (1 Cyc., 513; Frank v. Hicks, 4 Wyo., 502; Whalon v. Canal Co., 11 Wyo., 313; Linton v. Ins. Co., 104 Fed., 584; Schwartz v. Woodruff (Mich.), 93 N. W., 1067; Shoptaw v. Ridgway, 60 S. W., 723; Slattery v. Slattery, 120 Ia., 717.) An objection for want of sufficient acknowledgment goes to competency, and if not made on this ground is not available on appeal. (Schwartz v. Woodruff, *supra.*) Where the disqualifying interest of an officer taking an acknowledgment does not appear on the face of the instrument the record is constructive notice. (Bldg. Asso. v. Mensch, 196 Ill., 554; Read v. Loan Co., 68 O. St., 280; Bank v. Lawrence (Wash.), 73 Pac., 680; Stevenson v. Bracher, 90 Ky., 23; Cooper v. Hamilton, 97 Tenn., 285; Bennett v. Shipley, 82 Mo., 453; Titus v. Hove (Minn.), 47 N. W., 449; Corey v. Moore, 86 Va., 721; Morro v. Cole, 58 N. J. Eq., 203; Scott v. Thomas (Va.), 51 S. E.,

829; Jones v. Howard, 99 Ga., 451; 1 Cyc., 530.) But the defendant cannot raise the question, since he obtained no title by the receiver's sale. If the sale had been authorized and proper, there would still have been no transfer until confirmation. (Waumback v. Gates, 8 N. Y., 138; Thompson v. Gould, 20 Pick., 135; Atty. Gen. v. Ins. Co., 94 N. Y., 199.) And if there had been confirmation the purchaser was bound to know the state of the title. The rule of *caveat emptor* applies. (Rorer Jud. Sales, 476; Baron v. Mullen, 21 Minn., 374.) Liens are not divested by receiver's sales. (Water Co. v. Dekay, 36 N. J. Eq., 548; Lorch v. Aultman, 75 Ind., 162; Blair v. Walker, 26 Fed., 73; Foster v. Barnes, 81 Pa. St., 377.) Here the receiver "succeeded only to the title of the judgment debtor and as to property incumbered by liens he had only such rights as the judgment debtor had at the time of the appointment." (Bank v. Cook, 12 Wyo., 515; Bell v. Shibley, 33 Barb., 614; Hyde v. Lynde, 5 N. Y., 392; Gardner v. Smith, 29 Barb., 68; Sayles v. Water Co., 141 N. Y., 603; Rider v. Rider (R. I.), 32 Am., 919; Manf. Co. v. Cassell, 201 U. S., 344; Stuart v. Hoffman, 31 Mont., 190.)

With respect to the attempt to show that some of the cattle were the property of Thomas Bird and not the property of the firm, this proposition, if established, could not avail the defendant. Thomas Bird was a party to the mortgages. He could not set up an adverse claim to the property; nor can any purchaser from him or any representative of him, not occupying the position of an innocent purchaser, assert any better right.

The defendant having asserted title in himself, demand was not necessary. (18 Ency. Pl. & Pr., 542; Newell v. Newell, 34 Miss., 385; Raper v. Harrison, 37 Kan., 243; Bank v. Bank, 46 Kan., 376; Smith v. McLean, 24 Ia., 323; Whitney v. Levon, 34 Neb., 443; Jackson v. Dean, 1 Doug. (Mich.), 519; Homan v. Laboo, 1 Neb., 209; 2 Neb., 291.) Under our statutes a mortgagee is not guilty of laches, thereby losing his rights, by failing to take posses-

sion upon maturity. The verdict and judgment were proper; the case became one for damages under the statute. The peremptory instruction to find for plaintiff was proper, since the proofs left only a question of law to be determined. (Jackson v. Betts, 9 Cow., 225; Kahn v. Ins. Co., 4 Wyo., 419; Bank v. Kindt, 7 Wyo., 321.)

*H. V. S. Groesbeck,* for plaintiff in error (on petition for rehearing).

One partner cannot by a general power of attorney authorize another to execute for him a firm chattel mortgage. (McManus v. Smith (Ore.), 61 Pac., 844; Weeks v. Rake Co., 58 N. H., 101; Cavanaugh v. Salisbury (Utah), 63 Pac., 39; Guthiel v. Gilmer, id., 817; Peterson v. Armstrong, 66 id., 767; Meyer v. Michaels (Neb.), 95 N. W., 63; Kahn v. Becnel, 108 La., 296; Lee v. Ferguson, 5 La. Ann., 532.) The *mala fides* of the transaction is apparent from the fact that some of the obligations were those of the individual partner who executed the mortgages. (Lance v. Butler, 135 N. C., 419; Hartness v. Wallace, 106 N. C., 427; Bank v. Bayliss, 41 Mo., 274; Garner v. Hudgins, 46 Mo., 399; Goddard v. McCune, 122 Mo., 426; Gibbs v. Bates, 43 N. Y., 192; Kimball v. Walker, 30 Ill., 482; Patterson v. Martin, 6 Ired. L., 111; Redenbaugh v. Kelton, 130 Mo., 558; Story on Part. (7th Ed.), 148.)

The better policy and more reasonable rule, sustained by excellent authority, is that an officer's disqualifying interest renders the acknowledgment void for all purposes, so that the instrument is not entitled to record and is not notice to anyone. (Kothe v. Krag-Reynolds Co., 20 Ind. App., 293; Wilson v. Traer, 20 Ia., 231; Bank v. Radtke, 87 Ia., 363; Bank v. Stockdale, 121 Ia., 748; Smith v. Clark, 69 N. W., 1011; Lee v. Murphy, 112 Cal., 364; Wasson v. Connor, 54 Miss., 351; Hayes v. Asso., 124 Ala., 663; Bexar Asso. v. Heady, 21 Tex. Civ., 154; Thurlough v. Dresser, 98 Me., 161; 1 Ency. L. (2d Ed.), 493, and cases cited; 1 Supp. Ency. L., p. 67, and cases cited.)

The plaintiff in error stands in the attitude of a bona fide creditor, as well as an innocent purchaser. The mortgages were not good against him without a proper acknowledgment in the absence of actual notice, and the notary was disqualified upon the proof offered. (Edinger v. Grace, 8 Colo. App., 21; Asso. v. O'Lynn, 95 N. W., 368; Wilson v. Griess, 64 Neb., 792; Jenkins v. Jones, 138 Ala., 664; Crane v. Chandler, 5 Colo., 21; Wilcox v. Jackson, 7 Colo., 521; Sage v. Browning, 51 Ill., 217; Forest v. Tinkham, 29 Ill., 141; Rehkopf v. Miller, 59 Ill. App., 662; Hainey v. Alberry, 73 Mo., 427; 33 L. R. A., 237, note; Withers v. Baird, 32 Am. Dec., 757, notes; Springer v. Lipsis, 209 Ill., 261; Jones v. Noel, 139 Ill., 381; Van Heusen v. Radcliff, 17 N. Y., 583; Weill v. Zacher, 92 Ill. App., 296; Fahndrich v. Hudson, 76 Ill. App., 641, 645; McDowell v. Stewart, 83 Ill., 538; Bank v. Baker, 62 Ill. App., 154.)

We think the objection to the introduction of the power of attorney on the grounds that it was incompetent, immaterial and irrelevant, was a sufficient objection as to the lack of proof that Julia A. Bird executed it. Her signature was not sworn to, and it was necessary to prove her signature, as the witness was without the jurisdiction. Thomas Bird could not and did not identify it. Without proof as to her execution of the instrument, it was not shown that Thomas Bird had any authority to execute the mortgage in her behalf, and it was void for that omission in the proof. (Schouweiler v. McCaull, 99 N. W., 95; Barlow v. Collins, 139 Ala., 543; 1 Curr. L., 55; Elmslie v. Thurman, 40 So., 67 (Miss.); Carolan v. Yoran (N. Y.), 104 App. Div., 488; Power v. Goins (Tenn.), 35 S. W., 902; Paolillo v. Faber (N. Y.), 56 App. Div., 241.) Creditors are entitled to attack mortgages. (9 Cent. Dig. Col., 2689-2692, Secs, 365, 566.) The acknowledgments to the power of attorney were not properly or sufficiently certified. (Freedman v. Oppenheim (N. Y.), 80 App. Div., 487.) It did not appear that William J. Bird was known to the officer certifying to his acknowledgment.

In this state it seems that a chattel mortgage is a mere lien or security, and no title passes until foreclosure and sale. (Byrd v. Forbes, 3 Wash. Ty., 318; Cadwell v. Pray, 41 Mich., 307; Wood v. Weimar, 104 U. S., 786.) The defendant was entitled to demand. (Wells on Replevin, 356, 371; Hull v. Carnley, 17 N. Y., 202; 7 Cyc., 2526; Roberts v. Norris, 67 Ind., 386.) The foreclosure sale of the chattels involved in the replevin suit would have been void even if it had been obtained from the sheriff as receiver, because it was in *custodia legis,* and the same reason should apply as to purchaser under the sheriff's sale. (Fulghum v. Williams, 114 Ga., 643; Jones on Chat. Mort., Sec. 443.) Where a chattel mortgage authorizes the mortgagor to sell the mere fact that a third person is in possession of the property, claiming ownership, does not show that his possession is wrongful, in the absence of proof that he did not acquire possession of the mortgagor. (Pritchard v. Hooker, 114 Mo. App., 605.)

It makes no difference that the sheriff was in possession under a void order, or that Boswell claimed his right to the cattle, in his pleading and by his evidence.

The sheriff was in possession of the property of Bird Brothers at the time of the foreclosure sale, and the foreclosure proceedings were void, and it was incumbent upon the mortgagee to take possession of the property, without breach of peace, when he desired to foreclose; but it did not have the possession of the property at any time. Furthermore, if an affidavit for renewal continues the mortgage in force for each succeeding year, then there will be no default in payment; and replevin will not lie to recover of a third person in possession property mortgaged to secure a debt, before maturity of the debt or any forfeiture under the mortgage. (Buck v. Payne, 52 Miss., 271; Boreger v. Langenberg, 42 Mo. App., 7.) And where it is agreed that the mortgagor shall retain possession (as where a renewal affidavit is filed) the mortgagee cannot maintain replevin against one who takes the chattel. (Pierce v. Stevens, 30 Me., 184; Laubenheimer v. McDermott, 5 Mont., 512.)

As to the duty of the mortgagee to exercise the right of sale or foreclosure within reasonable time, even after taking possession or not at all, see Whittemore v. Fisher, 132 Ill., 243. We think there are no authorities that permit a mortgagee to play fast and loose with the other creditors of his mortgagor, by constantly renewing the mortgage. At any rate, its lien became waived by its mistatement of the amount due in the last renewal affidavit, and by its failure to take possession under the foreclosure proceedings by statutory sale. (Jones on Chat. Mort., 710.) And a mortgagee by selling in any other mode than in equity or in the manner provided by statute, waives all claim for deficiency. (Jones on Chat. Mort., Sec. 711.)

The jury should have been permitted to decide whether the explanations of Thomas Bird and others were sufficient to overcome the presumption arising from the execution of the John Bird and Thomas Bird notes, and the bill of sale. The evidence in relation to the receiver proceedings should have gone before the jury, as a matter of excuse and justification, and perhaps in mitigation of damages.

POTTER, CHIEF JUSTICE.

This is a replevin action brought by the First National Bank of Laramie, to recover possession of fifty head of neat cattle. Upon the giving of an undertaking for that purpose as provided by statute, the property was re-delivered to the defendant below, plaintiff in error here, by the officer who executed the writ. The plaintiff below claimed to be entitled to the possession of the property by virtue of an alleged special ownership under two chattel mortgages purporting to have been executed to the plaintiff by Thomas Bird, William J. Bird and Julia A. Bird, co-partners doing business under the firm name of Bird Brothers. The defendant below was in possession, claiming the property under a sale by the sheriff acting as receiver of the property and effects of Bird Brothers in a proceeding in aid of execution instituted by a creditor of that firm subsequent to the execution and recording of plaintiff's mortgages.

The court instructed the jury that upon the evidence the plaintiff was entitled to recover the value of the property at the date of the commencement of the action, together with interest from that date at eight per cent per annum. The jury returned a verdict for the plaintiff, assessing its damages at the sum of $1,830. Judgment was rendered upon the verdict to the effect that the plaintiff have and recover from the defendant the said sum, with costs of suit. The defendant brought the case here on error. The other material facts will be referred to in discussing the points involved in a disposition of the case.

1. In the first place it is contended that the mortgages held by plaintiff were not properly executed to create a lien upon partnership property. That contention is based upon the fact that the names of two of the partners, Julia A. Bird and William J. Bird, were signed to the mortgages by Thomas Bird, the other partner, as their attorney in fact. It is urged that this is not a compliance with the statute declaring it to be necessary for each and every member of a co-partnership to execute and acknowledge an instrument intended to operate as a chattel mortgage for and on behalf of the partnership. (R. S. 1899, Sec. 2808.) But we think that position cannot be sustained. Construing the statute referred to, it has been held essential to a valid chattel mortgage of partnership property that each partner should sign it. (Lellman v. Mills, 87 Pac., 985; Thomas et al. v. Schmitz, 87 Pac., 996; Ridgely v. Bank, 75 Fed., 808.) The plaintiff introduced in connection with the mortgages a power of attorney antedating them purporting to be executed by Julia A. Bird and William J. Bird, in substance and effect expressly authorizing their co-partner, Thomas Bird, as their true and lawful attorney, for them respectively and in their respective names, to mortgage any and all chattel property belonging to the partnership of Bird Brothers, to secure any and all indebtedness of said partnership or the members thereof, then or thereafter existing, and for such purposes to make, execute and acknowledge in

their names or otherwise any and all such conveyance or mortgage as may be needful or proper; and, by such written power, said Thomas Bird was expressly granted full power and authority to do and perform all and every act and thing requisite and necessary in the premises, as fully, to all intents and purposes, as the persons executing the same could do if personally present. Certain objections were interposed to the power of attorney which are to be considered, but for the purpose of the present question its proper execution and competency as evidence may be assumed. If it was not properly executed, or if for any other reason it was improperly admitted in evidence, then there would be no authority shown for the signing by Thomas Bird of the names of his co-partners, and his signature alone with that of the firm name signed by him would be insufficient to render the mortgages valid as liens upon the partnership property. But there is nothing in the statute nor any peculiar feature of the partnership relation, which prevents a partner, if under no legal disability, from appointing another, by means of a duly executed power of attorney, to act for him and in his name in the execution and acknowledgment of a partnership chattel mortgage, and we perceive no reason why the agent or attorney so appointed may not be a co-partner. The execution of the instrument by the attorney under such a power is to be regarded as the act of the principal, as much so as though he had been personally present and had signed by his own hand. Indeed, in Thomas & Schmitz v. Schmitz, *supra,* we took occasion to say that we supposed one partner might by a properly executed power of attorney authorize a co-partner as well as another person to sign his name to a chattel mortgage of partnership property and acknowledge it for him.

2. Error is assigned upon the court's refusal to permit proof on the part of defendant that the notary public who took the acknowledgment to each of the mortgages was at the time of taking the same a stockholder of the plaintiff bank, the mortgagee. Evidence to that effect was offered

for the purpose of showing that the officer was disqualified by reason of interest, which fact it is contended would render the acknowledgment void. A similar offer of proof was made as to the notary who administered and certified to the oaths to certain affidavits which had been filed as provided by law to continue the chattel mortgages in force as against third parties.

That an officer who is financially or beneficially interested in the transaction is incompetent to take and certify the acknowledgment to an instrument is a well settled and commendable rule, and is to be sustained if for no other reason upon the ground of public policy. By the great weight of authority the interest of a stockholder in a corporation is held to disqualify him to take an acknowledgment where the corporation is a party to the instrument. (First Nat. Bank v. Citizens' State Bank, 11 Wyo., 32.) It is generally stated that an acknowledgment is void when taken and certified by an officer disqualified by reason of interest, and that where an acknowledgment is essential to the validity of the instrument itself, the latter is also void if acknowledged before a disqualified officer—as in the case of a wife's conveyance of the homestead under our statutes. (Id.) The statement occasionally to be found in judicial decisions to the effect that an acknowledgment taken before an officer disqualified on account of interest is void for all purposes is not, we think, entirely accurate if intended to apply in all cases. Its correctness may be conceded in respect to instruments which are absolutely void without a proper acknowledgment, and also instruments which disclose the defect upon their face or the face of the certificate of acknowledgment. Where, however, the infirmity is not apparent upon the face of the deed or instrument or certificate of acknowledgment, but the acknowledgment appears to be fair and regular and to have been properly taken, and the instrument is one which would not be invalidated as between the parties to it by a defective acknowledgment, the recording of the instrument in the proper office will operate as con-

structive notice thereof, notwithstanding the latent defect. This rule is sustained by abundant authority and is founded upon public policy to carry out the purpose of the recording acts and preserve the reliability of the public records of transfers and conveyances. It is readily to be seen that a contrary rule would render unsafe any reliance upon the record of deeds or instruments requiring acknowledgment to entitle them to be recorded.

It is clearly not incumbent upon the recording officer to enter upon an extrinsic investigation before receiving for record an instrument regular on its face to discover whether the acknowledging officer was in fact disqualified because of interest. So far as the defect now being considered is concerned, if upon the face thereof the instrument is recordable and it is in fact recorded, the record should be held constructive notice to subsequent purchasers and others chargeable with record notice. (1 Cyc., 530, 553; 24 Ency L. (2d Ed.), 103; Ogden B. Ass'n. v. Mensch, 196 Ill., 554; Bank v. Hove, 45 Minn., 40; Peterson v. Lowry, 48 Tex., 408; Blanton v. Bostic, 126 N. C., 418; Stephens v. Hampton, 46 Mo., 404; Titus v. Johnson, 50 Tex., 224; Morrow v. Cole, 58 N. J. Eq., 203; Angier v. Schieffelin, 72 Pa. St., 106.) In the New Jersey case cited it was said: "Both reason and authority concur in declaring where the interest of the acknowledging officer does not appear on the face of the deed that the acknowledgment is not void, and that the registry of the deed is notice." The rule was stated in the Missouri case of Stephens v. Hampton, *supra,* as follows: "When the recorded instrument shows upon its face that the acknowledgment was taken by a party, or party in interest, it is improperly recorded, and is no constructive notice; but when it is fair upon its face it is the duty of the register to receive and record it, and its record operates as notice, notwithstanding there may be some hidden defect."

The chattel mortgages held by plaintiff were valid between the parties thereto even without an acknowledgment;

and as the acknowledgment appeared to have been properly taken and in every respect regular, the mortgages were entitled to be filed. They were filed and the record became notice to subsequent purchasers. Unless, therefore, the sale under which the defendant acquired possession discharged the mortgage lien he took with record notice, of the mortgages and subject thereto. It is only on the theory that the mortgages if valid and subsisting liens would bind the property in defendant's possession that it became material to his case to attack the manner of their execution and acknowledgment. If the sale by the sheriff separated the property from the mortgage lien then, the character and effect of the acknowledgment was immaterial. The sole purpose of the renewal affidavits was that of notice of the amount remaining unpaid of the debt secured by the mortgages that the latter might be continued in force against subsequent purchasers and other parties than the mortgagors. For the reasons above suggested as to the mortgages themselves, the affidavits must be regarded as sufficient to operate as constructive notice to all persons chargeable with record notice, since they did not disclose upon their face the alleged disqualification of the officer taking them. It is proper, however, to say that we refrain from deciding the unnecessary question whether in the case of such affidavits in general, an officer would be disqualified if a stockholder in the corporation for whose benefit they are made, where, as appears in the case at bar, the affidavit was made by an officer and agent of the corporation. We conclude, therefore, that the offers to show disqualification of the notary upon the grounds stated were properly refused.

3. The admission in evidence of the power of attorney to Thomas Bird purporting to have been executed by his copartners is assigned as error. Its introduction was objected to on the following grounds, viz.: (1) Improper proof of execution. (2) Insufficient certificates of acknowledgment. (3) That it was a stale instrument and no proof that it had

not been revoked. (4) That it is not competent for a partner to authorize the execution of a chattel mortgage by an agent or attorney in fact. The point suggested by the objection last stated has been considered above and determined adversely to the contention of plaintiff in error.

The proof of execution consisted of the testimony of Thomas Bird, the agent appointed by the instrument, authenticating the signatures of the makers. It was and is objected that such proof upon the showing made was improper. By the strict rule of the common law the primary or best evidence to prove the execution of a deed or other private writing having a subscribing witness is generally the testimony of such witness, if available, or if not then proof of his handwriting if that be feasible. If neither the testimony of the attesting witness nor proof of his handwriting be attainable, then it is competent to prove the signature of the grantor or maker of the instrument, and that will be sufficient. (Greenleaf on Ev., Secs. 569-575; 2 Wigmore on Ev., Sec. 1288, p. 1570.) But that part of the rule preferring proof of the signature of the attesting witness to that of the maker has not been universally accepted in this country. Some courts have maintained the admissibility of proof of the maker's handwriting directly upon its appearing that the testimony of the witness cannot be had. (Wigmore on Ev., Sec. 1320; Greenleaf's Ev., Sec. 575; Valentine v. Piper, 22 Pick., 85; Newsom v. Luster, 13 Ill., 175; McVicker v. Conkle, 95 Ga., 584; Landers v. Bolton, 26 Cal., 393; Sentney v. Overton, 4 Bibb, 445; Clark v. Boyd, 2 O., 56.) Mr. Wigmore in his recent valuable treatise above cited expresses the opinion that the preference aforesaid has been rarely supported by any reason, and attaches unusual importance to the extra-judicial statements of a third party, such as proof of an attester's signature practically amounts to.

An attesting witness who is not within the jurisdiction of the court is universally regarded as unavailable, and proof of that fact lets in secondary evidence; and it is equally

well settled that where the execution and attestation occurred out of the jurisdiction it is to be presumed, at least in the absence of contrary evidence, that the subscribing witness is out of the jurisdiction at the time of trial. (2 Wigmore on Ev., Sec. 1312, p. 1603.) The fact of execution and attestation abroad gives rise also to the presumption that proof of the handwriting of the witness is not attainable within the jurisdiction, so that in such event it is not incumbent upon the party offering the instrument to show otherwise that diligent and unsuccessful search has been made for proof of such handwriting. (Newsom v. Luster, 13 Ill., 175; Landers v. Bolton, 26 Cal., 393; Woodman v. Segar, 25 Me., 90; Yocum v. Barnes, 8 B. Mon., 496; Gibbs v. Cook, 4 Bibb., 535; Clardy v. Richardson, 24 Mo., 295; Sherman v. Transp. Co., 31 Vt., 162.) That presumption is clearly a reasonable one where it does not appear that the subscribing witness ever resided within the jurisdiction. We cannot conceive that any particular strength would be added to the situation by evidence that inquiry had been made at a place where the witness had never been known to reside and that no one could be found there to identify his handwriting. The presumption of the absence of the witness from the fact of execution in another jurisdiction is uniformly accepted, and as said in the California case above cited, "No greater efforts or diligence should be exacted in endeavoring to prove the handwriting of the witness, than is required to find and procure the witnesses themselves."

In the case above cited from Vermont the only preliminary proof was that of the party who offered the instrument, who testified that he was not present at its execution, and did not know where it was executed except from what appeared upon its face, that he did not know the attesting witnesses, and did not know of their being in that state. The deed purported to have been executed out of the state, and its execution was permitted by proof of the handwriting of the grantor. Chief Justice Redfield, deliv-

ering the opinion, held that said secondary proof was próper upon the showing made, and he further declared what we understand to be the prevailing rule in such cases that whether the evidence is satisfactory respecting the absence of the witness is chiefly a question for determination by the trial court, which will not be revised on error if there is any testimony tending to show the fact.

Thomas Bird was called as a witness to prove execution and he was shown the instrument. Upon its face the makers, Julia A. Bird and William J. Bird, were described as respectively residing in Illinois and Wisconsin, and by the certificates of acknowledgment it appears that the acknowledgments were respectively taken in the state where the party making acknowledgment resided. It disclosed that there was one witness to the signature of each maker. Thomas Bird testified that the makers, his co-partners, did not reside in this state when the instrument was executed, but in Illinois and Wisconsin, respectively; and that Julia A. Bird had never been in this state. We understand his testimony to be to the effect also that, though William J. Bird had often been here, this state had never been his place of residence. He further testified that he knew that the attesting witness to the signature of Julia A. Bird had resided in Illinois at the place of residence of Mrs. Bird, and he supposed the other witness lived in Wisconsin where his brother William resided, though he did not know him. Thomas Bird resided in this state, and was the managing partner of the firm of Bird Brothers; whose business was carried on in the county where the cause was tried.

Upon the showing made by that testimony we think it sufficiently appeared that the document was executed out of the state, that the witnesses to its execution had attested it out of the state, and as there was no evidence of any kind to indicate that such witnesses were then or ever had resided in the state, or indeed that they had been here at any time, the presumptions aforesaid followed, and proof of the signatures of the parties whose names appear to have been signed to the paper became admissible.

We have assumed without deciding that the instrument is one requiring the attestation of a witness. Though the common law rule applies to private writings generally bearing the signature of an attesting witness, it has not been adhered to very strictly in this country in the case of instruments not required by law to be witnessed, even if witnessed in fact.

As a result of the recording acts and the provisions as to acknowledgment, the rule has lost some of its importance as to a large class of documents, because of the enactment of statutes either changing the method of proof or permitting instruments executed with certain formalities to be introduced without preliminary proof of execution. In our own state deeds or instruments conveying any interest in lands in this state which are executed, acknowledged and attested in accordance with the laws of the state in force at the date thereof may be read in evidence without in the first instance additional proof of execution, and that applies also to a power of attorney to convey lands as well as an executory contract for the sale or purchase of lands. (R. S. 1899, Secs. 2739, 2755.)

Counsel for plaintiff in error now argues that the proof as to the genuineness of the signature of Julia A. Bird was insufficient. But the instument was not objected to on that ground when offered. The objection as to proof of execution as first interposed was as follows: "It has not been proved that these witnesses to the signature are beyond the jurisdiction of the court now and cannot be used as subscribing witnesses." The instrument was allowed to be read subject to the objections to be ruled upon later. In restating the objections at a later stage of the case and apparently immediately preceding the decision thereon, they were put in this respect as follows: "No sufficient reason is shown why the subscribing witness to each of the signatures were not present in court. No testimony has been offered to show that these were the signatures of the witnesses." The remaining objections did not refer to the proof of execution.

It is now argued that the manner of attestation was improper and constitutes a fatal objection. The instrument was attested as follows: "Signed, sealed and delivered in presence of James Bayne as to J. A. B. M. Michaelson as to W. J. B." The objection goes to the use of initials to designate the signatures respectively attested. Such objection was not made upon the trial, and is, therefore, not properly here for consideration. But we think the form employed is not unusual, and it would seem that the recital sufficiently shows that the first subscribing witness attested the signature of Julia A. Bird, and the other that of William J. Bird.

Objection is made to the certificate of acknowledgment as to each party. The only point suggested as to the certificate of the acknowledgment of Julia A. Bird is that it fails to state that she acknowledged the instrument to be her free act "and deed." It does certify that she acknowledged it to be "her free and voluntary act for the uses and purposes therein set forth" and thereby follows the permissive form provided by statute. (R. S. 1899, Sec. 2752.) The addition of the words "and deed" was not necessary. The certificate as to the other maker, omitting the caption and attestation of the officer, reads as follows: "Personally came before me William J. Bird, whose name is subscribed to the within instrument, and acknowledged same free and voluntary." That is objected to as insufficient, because too informal. The statute does not prescribe as essential any particular formalities in an ordinary certificate of acknowledgment. It provides generally that the officer shall endorse upon the instrument a certificate of the acknowledgment thereof and the true date of making the same, under his hand and seal of office, if there be one. (Id., Sec. 2741.) The form set out in Section 2752 is declared thereby to be sufficient, but its use is not made imperative. The certificate in question clearly shows that the maker personally appeared before the officer, and acknowledged his execution of the instrument to be free and voluntary. Even where a

statute requires a certificate to state that the person making the acknowledgment is personally known to the officer, it is held that a statement that the one whose name is subscribed to the instrument "personally appeared" before the officer is sufficient, because it necessarily implies that he was personally known.    (Warder v. Henry, 117 Mo., 530; Schley v. Pullman Car Co., 120 U. S., 575.)    It appears to us that the certificate contains every element essential to show the fact of acknowledgment and is, therefore, not objectionable as to form under our statutes.

The further objection that the omission of the year from the certificate renders it fatally defective is a more serious one.    The certificate is dated "this 29th day of July," and the officer states that his commission expires April 11, 1893.  The instrument itself is dated July 17, 1891, and the certificate of Julia A. Bird's acknowledgment shows that it was taken July 21, 1891.   Though the statute requires that the true date of making the acknowledgment shall be stated in the certificate, the rule in such cases is that it is sufficient if the date appears by evidence within the instrument itself. (1 Cyc., 572; Kelly v. Rosenstock, 45 Md., 389; Chase v. Whiting, 30 Wis., 544; Sloan v. Thompson, 4 Tex. Civ. App., 419.)   In Chase v. Whiting, *supra,* the Wisconsin court said as to an acknowledgment dated the "first day of November," omitting the year, that it might be fair to presume that the acknowledgment was of even date with the deed, which was November 1, 1853, but held that at all events it must be assumed to have taken place before the recording of the deed.   To the same effect is the Maryland and Texas cases above cited.   Here the recording did not occur until after the stated expiration of the notary's commission, and the recording date is, therefore, of no material assistance.    But as the instrument appears to have been made and executed on the seventeenth day of July, in the year 1891, and acknowledged by one of the parties a few days later, it is a proper presumption that the other acknowledgment bearing a date in July occurred in the same month

and year. A certificate of acknowledgment is to receive a liberal construction and the holding is general that where an omission can be supplied by a reasonable and fair construction of the whole instrument, the certificate will be sufficient.

The objection that the instrument was a stale one and that its revocation was not negatived is without merit. It was executed in 1891, recorded in 1896, and the first of plaintiff's mortgages here involved was executed in 1898. Whether or not any other mortgages had been given under the power granted by the instrument is not positively shown nor was a showing in that respect at all essential. Our attention has not been directed to any statute nor do we know of any rule that required the recording of the paper within any particular period. The power granted was a continuing one; the execution of mortgages was authorized to secure any partnership debts then or thereafter existing. Immediate exercise of the power was not required either by the terms of the instrument or by reasonable implication. There is nothing in the language employed in describing the acts to be performed or in the nature thereof that limited the power conferred to a particular transaction; and it is not apparent that any circumstance other than a dissolution of the partnership would cause a termination of the authority granted by operation of law. The partnership appears to have continued without interruption until after the execution of the mortgages in question and indeed until shortly before the commencement of this action. Revocation by act of the parties, at least during the existence of the partnership, is not to be presumed. There is no ground, therefore, for holding it to have been incumbent upon the plaintiff to show affirmatively that the power of attorney had not been revoked.

4. It is contended that one of the notes secured by plaintiff's first mortgage was improperly included therein, and that the remainder of the mortgage indebtedness appeared to have been more than satisfied at the time of trial,

so that by excluding such note plaintiff would be left without any interest in the mortgaged property. The contention is based on the fact that the note in question was signed by one John Bird and made payable to Bird Brothers, though the latter, apparently at the time of the making thereof, indorsed it to the plaintiff and by a separate indorsement guaranteed its payment. The mortgage was expressly given to secure the payment of a stated sum according to the tenor and effect of ten certain promissory notes set out by copy in the mortgage, including the note aforesaid—the copy so set out showing the indorsements of Bird Brothers, the mortgagors. It was shown by uncontradicted evidence that John Bird, not a member of the firm, had signed the note solely for the latter's accommodation, and that it represented in fact an indebtedness of the firm to the plaintiff. It came, therefore, clearly within the authority granted by the power of attorney to Thomas Bird. The note was but the evidence of the debt, and it matters not what the purpose was in making the note in the form stated, so long as that purpose could not be legally questioned by the mortgagors or the defendant. Not only was the debt primarily that of the firm, but the plaintiff had its written 'obligation through the general indorsement and guaranty; the fact that John Bird had also bound himself as maker did not render the note any the less a partnership debt capable of sustaining a partnership mortgage.

5. It is contended on several grounds that the petition is insufficient to support a judgment. The first point suggested in this connection is that the failure to allege venue, referring to the place of the unlawful detention, constitutes a fatal defect. In some jurisdictions replevin is a local action, and must be brought where the goods are detained; and where that is the case it is held that an allegation of the jurisdictional fact is essential. It might perhaps be questioned even under such conditions whether an absence of the averment would be regarded as fatal at least after verdict where, as appears in the case at bar, the chattels were

shown by the officer's return to the writ to have been found and taken in defendant's possession in the county in which the suit was brought. But waiving consideration of that question, the reason for such an allegation does not exist under our practice. The action of replevin in this state is not local, but may ordinarily be brought in the county where a defendant resides or may be summoned, under Section 3505, Revised Statutes of 1899. After providing in preceding sections that certain actions relating to real estate must be brought in the county where the subject of the action is situate, and that other specified actions must be brought in the county where the cause, or some part thereof, arose, and regulating the venue for still other actions, none of them including a suit in replevin against an individual defendant, not a corporation, it is declared by the section above cited that "every other action must be brought in the county in which a defendant resides or may be summoned," with the exception of actions against an executor, administrator, guardian or trustee, which may be brought in the county wherein he was appointed or resides.

By reference, therefore, to the provisions of the chapter of the code upon the subject of venue, it appears that jurisdiction in replevin does not depend upon the location of the property or the place of the wrongful detention. But the statutory provisions relating particularly to replevin make the proposition even more clear. If the property is not taken, the action may proceed as one for damages only. (R. S. 1899, Sec. 4158.) And an order for delivery, which is obtainable at or after the commencement of the action upon filing the prescribed affidavit, may be directed to any county, and several orders may issue at the same time, or successively at the option of the plaintiff. (Id., Secs. 4146, 4159.) The locality of the detention being, therefore, unimportant in respect to the venue of the action, it is very clear that an averment in support of venue is not required. (Hodson v. Warner, 60 Ind., 214; Hoke v. Applegate, 92 Ind., 570; Fry v. Shafor, 164 Ind., 699.)

It is next argued that instead of alleging a "wrongful" detention, as in this petition, the detention should be alleged to be "illegal." Replevin is usually defined as an action for the recovery of chattels wrongfully taken and detained or wrongfully detained; and the gist of the action is indifferently stated to be the "wrongful" or "unlawful" detention. A distinction between those words as applied to the detention sufficient to support the action does not seem to have been recognized. (Wells on Replevin (2d Ed.), Sec. 31; Cobbey on Replevin, Sec. 12.) Approved forms usually allege that the defendant "wrongfully" detains the property. And to secure an order of delivery under the statute the affidavit is only required to state in this connection that "the property is wrongfully detained by the defendant." If the detention is wrongful it will be illegal or unlawful, in the sense in which those words are applied to the detention of personal chattels from the possession of a plaintiff entitled thereto. The objection is not well taken. (Grever v. Taylor, 53 O. St., 621; Haggard v. Wallen, 6 Neb., 271.)

It seems to be further contended that without an allegation that the plaintiff had been in possession the petition is insufficient upon the ground that a special property is not complete until actual delivery. Under some circumstances it may be true that a special ownership of specific chattels would not be acquired until taken into possession. But that a mortgagee may maintain replevin upon default in the conditions of the mortgage even though he has never had actual possession is well settled; indeed too well settled to require discussion or citation of authority. (Schlessinger v. Cook, 9 Wyo., 256.) The petition here alleges the execution and material terms and conditions of the mortgage, and the occurrence of the default entitling the plaintiff as mortgagee to possession. Where the mortgagor is permitted by the mortgage to continue in possession until default or until the mortgagee shall elect to take possession, a demand therefor before suit is usually essential to render

(7)

the possession of the mortgagor, or the one claiming under him subject to the mortgage, wrongful; and demurrer might lie to a petition in replevin brought by the mortgagee in such case not alleging a demand, or circumstances sufficient to amount to a waiver thereof, or at least facts sufficient to let in proof thereof. There was, however, no demurrer here, and the petition contains an averment not only that the defendant wrongfully detains the property, but that the chattels described "have been seized and claimed by the defendant." Whether the latter statement would be sufficient to show an assertion of ownership by defendant as against the mortgages so as to avoid a demurrer, on the ground that demand would be manifestly unavailable and, therefore, unnecessary, need not be considered, since the defendant for reasons presently to be explained in discussing the instructions, is not in a position to insist upon allegation or proof of prior demand, nor need the sufficiency of the allegation of wrongful detention to authorize proof of demand be considered.

6. The court instructed the jury that upon the evidence the plaintiff was entitled to recover the value of the cattle in controversy, and refused to instruct them at defendant's request to the effect that if no demand upon the defendant for possession, by or on behalf of the plaintiff before the commencement of the action, had been shown, the defendant would be entitled to the possession of the property. It may be conceded that where the original taking was not wrongful a demand is as a rule necessary to put the right of possession in the plaintiff. But demand or proof thereof may be waived, not only by the previous conduct or assertions of a defendant in possession showing that a demand would not have been complied with, but also by his attitude in the suit. This principle is stated in Wells on Replevin (2d Ed.), Sec. 373, as follows: "Cases often arise when the defendant would be entitled to a demand, but has done some act or made some declaration which excuses the plaintiff from making it. Proof of any circumstance which would

satisfy a jury that a demand would have been unavailing
(as a refusal by the defendant to listen to one, or a state-
ment in advance that he will not deliver) will be sufficient
to excuse proof." And in Section 374 it is said: "Where
the defendant sets up a claim of ownership and demands a
return of the goods, this claim is inconsistent with any
hypothesis that he would surrender them on demand, and
will obviate the necessity of proving demand." (See also
Bunce v. McMahon, 6 Wyo., 24.)

The reason of the rule requiring demand where the or-
iginal taking was not wrongful is that the possession under
a lawful taking must be regarded as rightful until someone
having a superior right has asserted the same by asking
that the property be delivered to him, and so the law pre-
sumes that a defendant who acquired possession rightfully
will respect the rights of the true owner on being informed
thereof, and deliver the possession at once on request.
(Wells on Replevin (2d Ed.), Sec. 346.) Where, there-
fore, it appears from the declaration, conduct or claims of a
defendant that a demand would have been a mere idle cer-
emony it is excused. It is evident that a defendant may by
his own conduct in respect to the property overthrow the
presumption that he would have delivered it upon demand,
and it is well settled that such result will follow a claim
made in the suit either by the pleadings or upon the trial
which is inconsistent with the supposition that the defendant
would have complied with a previous demand. As said in
one case, "Where the defendant claims to be the owner of
the property, he ought not to be permitted to set up such
claim (want of demand) and thus defeat a recovery by
plaintiff, under the pretense that he would have surrendered
the property had he been requested so to do." (Howard v.
Braun, 14 S. D., 579.) Other authorities are numerous
upon the proposition, a few only of which need be cited.
(24 Am. Eng. Ency. L., 510; Wells on Replevin (2d Ed.),
Note XXII, pp. 322-324; Lewis v. Smart, 67 Me., 206;
Merrill v. Denton, 73 Mich., 628; Leek v. Cresley, 98 Ia.,

593; Bunce v. McMahon, *supra;* Greenberg v. Stevens, 212 Ill., 606; Denver L. S. Commission Co. v. Parks (Colo.), 91 Pac., 1110.)

Though the defendant's answer contains as a first defense a general denial of the allegations of the petition, it alleges in other separate defenses that he is the owner of the proprty; that the mortgages described in the petition are fraudulent and void and without consideration, and executed without authority from two members of the partnership of Bird Brothers (the mortgagors); that they were not in force at the commencement of the action; that the defendant became the lawful and rightful owner under a sale by the sheriff as receiver of the property and effects of Bird Brothers, and is entitled to the sole use and benefit of said property and the exclusive possession thereof; and that plaintiff never had either a general or special ownership in the property and was never entitled to its possession. And the answer contained a prayer that the defendant be adjudged to be the owner and entitled to the sole and exclusive possession of the property, and judgment for damages.

If it be assumed that all the affirmative allegations might have been shown under the general denial, and that the latter required proof of demand, notwithstanding the specific allegations, then it appears that upon the taking of the property by the officer in executing the order of delivery issued at the commencement of the action, the defendant, as permitted by statute, gave an undertaking which required and was followed by a redelivery of the property to him; that upon the trial he admitted having disposed of some of the cattle, and that he attempted to defend his possession by proof of the invalidity of plaintiff's mortgages, and of his ownership free of the lien thereof by virtue of the receiver's sale. It matters not that the evidence offered in opposition to the validity and lien of the mortgages and in support of his claim of title was excluded. He excepted to such exclusion and is here complaining of it; and the fact remains

that his assertions and conduct upon the trial were inconsistent with the presumption that he would have delivered the property to plaintiff upon demand. Under the circumstances, therefore, the defendant cannot be heard to complain of the absence of evidence to show a demand. The instruction requested was, moreover, erroneous, since it eliminated all consideration of the facts pertinent upon the question of waiver of demand or proof thereof.

7. It is further contended as a ground for reversal that since the mortgages of plaintiff matured respectively May 26, 1900, and January 1, 1901, and this action was not brought until March 12, 1903, nor possession of the mortgaged property taken within that period by the plaintiff as mortgagee, the rights of the latter as against creditors and subsequent purchasers had become lost by its laches, upon the theory that it is the duty of a mortgagee of chattels in order to preserve his lien against such third parties to take possession within a reasonable time after default.

This position cannot be sustained upon our statutes and the facts in the case showing a compliance therewith. In the first place it is expressly permitted by statute to insert in a chattel mortgage a provision authorizing the mortgagor to use, handle, operate, herd, manage and control the mortgaged property, and to market, sell and dispose of such portions thereof as may be necessary in the course of business, or to preserve and care for the same, and replace such property, or parts sold, with other property of like kind or character, all of which shall be subject to the operation and effect of the mortgage. (R. S. 1899, Sec. 2818.) And the mortgages here provided that until default the mortgagor might retain possession of the property and use, handle, manage and control the same.

The statute further declares that a chattel mortgage filed as required shall remain in full force and validity for the term for which it shall be given, and for sixty days thereafter, and that after the expiration of such sixty days after maturity it shall cease to be valid as against creditors, and

subsequent purchasers or mortgagees in good faith, unless
before the expiration thereof notice of foreclosure shall be
given as required by law, or the mortgagee, his heirs, legal
representatives, or assigns, or the agent or attorney of the
mortgagee or his assigns, shall make affidavit exhibiting the
interest of the owner and holder in such mortgage, and the
amount yet due and unpaid, which affidavit is to be filed in
all respects as the original mortgage; and thereupon it is
provided that the original mortgage shall continue in full
force and virtue for the period of one year after the term
for which it was originally given; and a like affidavit may
be filed within sixty days after the expiration of said period
of one year continuing thereby the mortgage in force an-
other year, and under the same conditions and within the
same limitation a like affidavit may be filed to renew the
mortgage for each succeeding year thereafter until the debt
secured thereby shall be fully paid. (Id., Sec. 2817.) The
statute clearly implies that the filing of a mortgage is a
substitute for the transfer of possession. (Id., Sec. 2811.)
And that is the usual purpose and effect of recording stat-
utes. (6 Cyc., 1063; Keenan v. Stimson, 32 Minn., 377.)
The same effect is given after maturity to an affidavit filed
in renewal of a filed mortgage, since such an affidavit when
filed excuses foreclosure proceedings and continues the
mortgage in full force and virtue for the prescribed period.
That the purpose of the affidavit is notice to purchasers and
others is evident not only from the provision respecting its
making and filing, but from the duty imposed upon the re-
cording officer to note the filing of each renewal affidavit
upon the original mortgage in his office and also upon the
index book opposite the original record of the instrument.
(Id., Sec. 2817.) The mortgages in controversy were duly
filed and the renewal affidavits were also filed as shown by
the record, and there is no suggestion that they were not
filed in time to continue the mortgages in force. It would
in effect abrogate the statute to hold that a mortgagee is
required not only to file a renewal affidavit, but to take pos-

session also upon maturity of the mortgage debt to continue the priority of his mortgage lien, or to protect his rights against a charge of fraud.

8. Prior to the execution of plaintiff's first mortgage another bank located in the same city with plaintiff held an unpaid note of Bird Brothers for $8,000, apparently secured by a mortgage or pledge of cattle and hay; and also three notes signed by Thomas Bird for $1,000, $500 and $200 respectively. The plaintiff advanced the money to take up these notes, and the amount so advanced entered into the consideration of the mortgage and was included in the notes of even date therewith and thereby secured. The additional sum of $6,000 was also paid into such other bank by plaintiff to cover the purchase price of 150 head of cattle sold by the cashier of such bank, which amount was also embraced in said several notes and became a part of the consideration of said mortgage. The bill of sale for the cattle was made out by the vendor to Thomas Bird, and, as the vendor testified, was handed to the plaintiff bank. It was dated May 27, 1898, while the mortgage was dated May 26, 1898. It did not appear that Thomas Bird either directed the bill of sale to be made out in his own name, or knew that it had been so drawn until the trial. He testified without contradiction that he bought the cattle for the partnership, and that the latter had possession of the cattle several days before the payment of the purchase price, and before the execution of the mortgage to plaintiff; and the price was advanced by plaintiff on the credit of the firm whose obligations it took therefor. There is nothing in the evidence outside the bill of sale even tending to show that Thomas Bird ever claimed to be the individual owner of such cattle. The purchase price was paid on the day the mortgage was executed, and evidently to complete a purchase which had been previously agreed upon. Thomas Bird also testified, and in this respect also his testimony stands undisputed, that his notes held as aforesaid by the other bank were given for money borrowed for and on account of the firm;

and that he did no business except for the partnership. It is also undisputed that he was the resident and managing partner. The plaintiff bank, as appears from the evidence beyond controversy, understood that the money advanced by it was loaned to the partnership.

Upon the above facts we think there is no reasonable ground for the contention that the amount represented by the three Thomas Bird notes constituted his individual indebtedness, and was, therefore, improperly and fraudulently included in the partnership mortgage. Standing alone, the notes themselves would raise the presumption that Thomas Bird and not the firm was the debtor; but the presumption would not be conclusive. The question here is not who would have been liable on the notes had suit been brought thereon, but whether the partnership mortgage attempted to secure the individual indebtedness of Thomas Bird as distinguished from partnership indebtedness.

This question was raised by a request on behalf of the defendant for an instruction to the effect that if any part of the indebetedness secured by the mortgage was not a partnership obligation it should be deducted from the amount remaining due and if sufficient to discharge the same, then the verdict should be for the defendant. The instruction was refused, and, as previously stated, the court directed a verdict for the plaintiff, submitting only for the consideration of the jury the amount of the damages to be recovered. It was formerly held under what is known as the "scintilla of evidence" rule that whenever there is any evidence, however slight, tending to prove an issue, it must be submitted to the jury, or, as otherwise stated, that "a verdict may be directed only where there is no evidence, however slight, and no inference to be drawn from the facts which will support the opposite theory." Upon that rule, if a party produced a scintilla of proof in his favor he was entitled to have his case submitted to the jury. (6 Ency. Pl. & Pr., 675-676.) That doctrine grew out of the extreme reluctance of the courts to invade the province of the

jury, but according to the modern and more reasonable view the scintilla rule fails to carefully discriminate between the prerogatives of the court and jury, and is deemed to require the submission of evidence to a jury which might afford no reasonable justification for a verdict. The power of the court to invade the province of the jury is still uniformly denied, but there is apparent confusion in the authorities when it comes to stating a test or principle which would be applicable generally in determining the propriety of directing a verdict either upon the whole case or some particular issue.

It is generally agreed that a question of fact must be passed upon by the jury and a question of law determined by the court, and that the credibility of witnesses, and the weight of conflicting testimony are questions of fact. That it is the function of the jury and not the court to decide which way contradictory evidence preponderates is conceded; and also that if the evidence produced by a party is insufficient in law to authorize a finding in his favor, it is the right and duty of the court to so hold and peremptorily instruct in reference to it. Many courts hold that in determining when a verdict should be directed a proper criterion is whether a different verdict would necessarily be vacated as contrary to the evidence. (Pleasants v. Fant, 22 Wall., 120; Ketterman v. R. R. Co., 48 W. Va., 606; Offutt v. Columbian Exposition, 175 Ill., 472; Los Angeles F. & M. Co. v. Thompson, 117 Cal., 594.) The correctness of that test is denied in New York, because, as said by the court of appeals of that state, the results of directing a verdict and setting one aside are widely different, since where a verdict is set aside a new trial is ordered, but a verdict directed forever concludes the parties. (McDonald v. Metropolitan St. Ry. Co., 167 N. Y., 66.) They, however, say: "If the evidence is insufficient, or if that which has been introduced is conclusively answered, so that as a matter of law, no question of credibility or issue of fact remains, then the question being one of law, it is the duty of the court to

determine it," and again: "If there is no evidence to sustain an opposite verdict, a trial court is justified in directing one, not because it would have authority to set aside an opposite one, but because there was an actual defect of proof, and, hence, as a matter of law, the party was not entitled to recover."

It is said in Wisconsin that the rule to the effect that if there is any evidence to establish a disputed fact, and a conflict in that regard, the question is for the jury, should be construed as calling for evidence worthy of belief in regard to the subject, and, "if the truth of the proposition be not within the range of probabilities, in the light of reason and common sense, in view of facts of common knowledge, or facts established in the case beyond reasonable controversy, then evidence of the existence of the fact involved does not prove such existence, or tend to prove it." In regard to the case then before the court the following principle was deduced: "If the evidence of plaintiffs, taking the most favorable view it will reasonably bear, including all reasonable inferences therefrom, assuming that it establishes all that it tends to establish when viewed in the light of undisputed facts, would support a verdict in plaintiff's favor, then the case should have been submitted to the jury for decision, and we should say that the evidence is sufficient for such verdict, if, in view of conceded or undisputed facts in plaintiff's evidence, there is room for unbiased minds to reasonably differ as to where the truth lies, not regarding, in reaching that result, mere conjecture or possibility." (O'Brien v. R. R. Co., 102 Wis., 628.) Without going further into the general question, we refer to 6 Ency. Pl. & Pr., 675-687, where the numerous authorities are cited and the views entertained in the various jurisdictions explained.

In Riner v. New Hampshire Ins. Co., 9 Wyo., 81, 446, the direction of a verdict was held erroneous on the ground that a material question of fact arose upon the evidence which was for the jury to determine. In Kahn v. Traders' Ins. Co., 4 Wyo., 419, the court held that a peremptory in-

struction as to the effect of a particular fact in that case
should have been given, since the facts were plain, simple
and undisputed, and there was no question of fact for the
jury's determination.   Speaking for the court, Mr. Justice
Clark said: "When the evidence to a fact is positive and
not disputed or questioned, it ought to be taken as an estab-
lished fact, and the charge of the court should proceed upon
this basis."

In the case at bar, the disputed fact, so far as the point
now being considered is concerned, was whether the mort-
gages held by plaintiff were valid in respect to consideration
and good faith.   The only facts in the evidence tending to
support defendant's theory outside of the John Bird note
·above considered were that a small part of the consideration
had previously been represented by the personal notes of
Thomas Bird to another bank, and that the bill of sale of
certain cattle bore date on the day following the date of
plaintiff's mortgage, and conveyed the cattle to Thomas
Bird.   But the presumptions arising from such facts were
completely overcome by the undisputed testimony of Thomas
Bird, and the further undisputed fact that firm obligations
were given to the plaintiff bank for the money it advanced,
without any apparent questioning thereof at any time there-
after by the firm or any member thereof; and, as testified
by the cashier of the plaintiff, that the money was loaned to
the firm.   Moreover, the purchase price of the cattle men-
tioned in the bill of sale was advanced by the plaintiff, who
took therefor the firm notes, and there was not the slightest
contradiction of Thomas Bird's testimony that he bought
the cattle for the partnership, other than the presumption
which might have arisen upon the bill of sale if unexplained.
His statement that he did no business except for the com-
pany remained uncontradicted, and not a single circum-
stance tending to discredit it was brought out in the evi-
dence.   In reference to this matter, therefore, the fact stood
established that, although the bill of sale was drawn as
stated, and Thomas Bird had given his individual notes for

some of the debt before the transaction with plaintiff, the cattle were bought for and delivered to the firm, and the notes were made for money borrowed for and received by the firm. The question then became one of law whether upon such facts plaintiff's mortgage attempted to secure the payment of money not in reality a debt of the partnership. As said in a Michigan case: "When the testimony of *bona fides* is thus undisputed, it is proper for the court to direct a verdict." (Drover's Nat. Bank v. Potvin, 116 Mich., 474.) So far as this point is concerned, therefore, the instruction requested was correctly refused, since it would have been misleading and inapplicable upon the evidence, and the peremptory instruction was proper. The facts do not sustain the contention that the firm mortgaged cattle not belonging to it.

9. It was conclusively established upon the evidence that the amount due and unpaid upon the obligations secured by the mortgages, after giving all proper credits, largely exceeded the value of the property in controversy. That fact and the occurrence of default in the mortgage conditions before the commencement of the action gave the plaintiff the right of possession, unless a superior right should be established. All objections interposed to the mortgages, their validity, consideration and good faith, have been considered and found to be untenable. The defendant sought to show ownership and right to possession in himself through a purchase from parties to whom the property had been sold by the sheriff, acting as receiver of the property and effects of Bird Brothers under an appointment in a proceeding in aid of execution instituted by a judgment creditor of said firm. He produced a bill of sale from the sheriff to defendant's vendors and a similar instrument from them to him; and the fact that a sale had actually occurred between the parties to each of those instruments followed by transfer of possession was shown, and also that at the time he sold the property the sheriff was in possession by virtue of his said appointment as receiver.

Defendant thereupon produced and offered, in the order in which they appeared in the cause wherein the appointment of receiver had occurred, the various papers and court orders leading up to and culminating in an order of the district court authorizing the sale of fifty head of cattle for the purpose of creating a fund to maintain and care for the property in the receiver's hands, consisting of real estate, several hundred cattle and considerable personal property. The papers were admitted temporarily, subject, as the court stated, to all legal objections, leaving the question of their relevancy to be determined upon the whole record when all that should be deemed material had been presented. It finally appeared that the order of sale had been subsequently reversed and vacated by this court on error, and that pending the proceedings in error, and on the same day as the receiver's sale, though apparently too late to prevent the same, an order had been entered by this court staying proceedings upon the order appealed from. The evidence in relation to the receiver's proceedings was thereupon excluded. The order aforesaid was reversed in the case of Cook v. Bank, 12 Wyo., 492, and it will be unnecessary to here repeat the grounds thereof, except to say that it was held to have been entered without jurisdiction. The rights and duties of a receiver in a proceeding supplementary to execution under our practice were considered at length in that case, and the conclusion reached that the appointment of the receiver did not operate to divest prior valid and subsisting liens, nor authorize a sale of property in disregard of such liens to pay the receiver's expenses.

Upon the evidence in support of the receiver's sale it, therefore, appeared as a matter of law that the defendant had acquired by his purchase, if anything, no more than whatever interest Bird Brothers, the judgment creditors, had, subject to plaintiff's mortgages. With or without the excluded evidence, the defendant's interest was shown to be subordinate to that of the plaintiff; and since the plaintiff's interest embraced the entire value of the property, the de-

fendant was not entitled in law to recover anything. No question of fact except on the subject of damages remained in the case, or would have remained even had the record evidence not been stricken out. A peremptory instruction to find for the plaintiff was, therefore, justified.

10. Following the instruction of the court that the plaintiff was entitled to recover the value of the cattle in controversy, the jury returned a verdict finding generally for the plaintiff and assessing its damages at the sum of $1,830. Thereupon judgment was rendered in favor of the plaintiff and against the defendant for the amount of the damages so assessed with costs. It is contended that the verdict and judgment are insufficient under our statutes, for the reason, as stated in the brief of plaintiff in error, that the jury should have found, not generally for the plaintiff, but that it was either the owner or entitled to possession of the property, and then assessed such damages as were found to be right and proper, and that a judgment merely for the value of the property is not contemplated by the law.

The proposition relied on in support of the above contention seems to be that the code requirements as to verdict and judgment must be complied with, and that a failure in that regard is ground for reversal. Upon the circumstances of this case, however, the proposition is not applicable, since the statute contains no provision concerning the form of either verdict or judgment, where, as in this case, the defendant has obtained a redelivery of the property taken upon the writ, and retained it, upon giving the statutory undertaking for that purpose.

Until the amendment of 1897 (S. L. 1897, Ch. 43) there was no authority in the statute for the giving by a defendant in replevin of a redelivery bond, but, except in the case of an heirloom, or relic, which might be retained by the officer executing the writ subject to the order of the court, property taken upon a replevin writ was required to be delivered to the plaintiff, upon the giving by him of an undertaking as prescribed by the statute, or returned to the defendant, if

such undertaking was not given within the period allowed
therefor. Thus, under the code prior to the act of 1897,
property sought to be recovered in a replevin action would,
if taken upon the writ, or order of delivery, as it is desig-
nated in the statute, be either delivered to the plaintiff, or
returned to the defendant for failure of the plaintiff to give
an undertaking, or, in case of a peculiar kind of property,
such as an heirloom, etc., it might remain in the sheriff's
hands. (R. S. 1887, Secs. 3025-3029; R. S. 1899, Secs.
4150-4154.)

In the related sections regulating verdict and judgment
in such an action no other contingency was, therefore, pro-
vided for in case of property taken upon the writ. The
nature of the recovery was and is specified in the event of
judgment for defendant on demurrer, or failure of plaintiff
to prosecute the action, or upon the issues joined when the
property is delivered to the plaintiff, or remains in the
sheriff's hands; and also in the case of judgment for plain-
tiff upon the issues or on default when the property has
been delivered to him, or redelivered to defendant for want
of an undertaking by plaintiff, or remains in the sheriff's
hands, or has not been taken. (R. S. 1887, Secs. 3030-3033;
R. S. 1899, Secs. 4155-4158.) The statute clearly dis-
tinguishes between an official taking upon the writ and a
subsequent delivery to plaintiff or redelivery to defendant;
so that it is plainly impossible to apply the provisions of
Section 4158 of the revision of 1899, permitting the action
to proceed as one for damages when the property has not
been taken, or has been redelivered to defendant for want
of an undertaking by plaintiff, to the case here presented
where the defendant has obtained a redelivery upon giving
the statutory undertaking. The condition of the authorized
undertaking further increases the difficulty of applying the
provisions of that section to such a case.

The provisions as to judgment cover every contingency
that could have arisen under the statute prior to its amend-
ment, except that property remaining in the sheriff's hands

was governed by the general direction that it be held subject to the order of the court. In 1897 Section 3026 of the revision of 1887 was amended, and as amended it is now Section 4151 of the revision of 1899. Into that section, which originally provided for property having a value not wholly marketable, such as an heirloom or relic, to be retained by the sheriff, was incorporated, by the amendment aforesaid, a provision authorizing the defendant, within a stated time from the levying of the writ, to furnish an undertaking to the plaintiff to the effect that the defendant will deliver the property to the plaintiff, if such delivery be adjudged, and will pay all costs and damages that may be awarded against him, and requiring the sheriff thereupon to redeliver the property. No express change was made in the provisions regarding the judgment to be recovered in the action.

It was not the original theory of the statute that property once taken upon a replevin writ, and either delivered to the plaintiff, or redelivered to the defendant, should be returned, or that its return should be adjudged. Plaintiff's undertaking was and is required to be to the effect that he shall duly prosecute the action and pay all costs and damages which may be awarded against him. (R. S. 1887, Sec. 3025; R. S. 1899, Sec. 4150.) The action was and is allowed to proceed as one for damages upon the failure of plaintiff to give an undertaking, and a redelivery for that reason to the defendant; and there is no provision for a judgment requiring a return to plaintiff in that case. The plaintiff's undertaking, when given, stands in the place of the property to the extent of defendant's interest, and the property passes into the exclusive possession and control of the plaintiff. (Smith v. McGregor, 10 O. St., 461; Uphaus v. Miller, 68 O. St., 401; Union Pac. R. R. Co. v. U. S., 2 Wyo., 170.)

The amendment of 1897 introduced a new element or theory into the statute, by authorizing the defendant to obtain a redelivery upon undertaking with sufficient sureties

to "deliver the property to the plaintiff" if that should be adjudged. The silence of the statute upon the question of recovery in such case makes necessary the application of the rule in that respect in the common law actions of replevin and detinue, for which the statutory action is a substitute. Replevin at common law required as its foundation an unlawful taking, while detinue proceeded for a wrongful detention, where the original taking had been lawful; but in modern practice, at least in this country, the gist of the action is the wrongful detention, whether the original taking was lawful or unlawful; and that is the case under our statute. In the common law action, where the goods were not obtained upon the writ by the plaintiff, the judgment was in the alternative, if he succeeded, that he recover the property, or in case a delivery cannot be had that he recover the value thereof. (Bouvier's L. Dict. (Rawle's Rev.), p. 565; 2 id., p. 885; 3 Bl. Com., 151; 2 Tidd's Pr., 887; Cobbey on Replevin, Sec. 1105; Wells on Replevin (2d Ed.), Sec. 772; 18 Ency. Pl. & Pr., 591-598.)

In view of the general rule and the prescribed terms of the defendant's undertaking, which secure a delivery to the plaintiff if adjudged, it must be held, we think, that, where defendant has obtained the possession upon giving the undertaking, either party may, primarily, insist that plaintiff's judgment shall embrace a return of the property if that be possible; and, ordinarily, to accomplish the result contemplated by the statute, and to which the respective parties would be entitled, the judgment should be in the alternative in such case. It does not necessarily follow, however, that a judgment for the value alone will be erroneous or even if erroneous that it will cause a reversal. Many cases hold it sufficient to order a modification of the judgment without reversing it. (Ward v. Masterson, 10 Kan., 77; Babb v. Aldrich, 25 Pac., 558.) In Boley v. Griswold, 20 Wall., 486, it is held that a judgment is not necessarily erroneous if the alternative is not expressed on its face. It is said in the opinion: "The court must be satisfied that the de-

livery cannot be made before it can adjudge absolutely the payment of money. But, if so satisfied, it may so adjudge. A special finding to that effect is not necessary. An absolute judgment for the money is equivalent to such a finding." In 18 Ency. Pl. & Pr., 592-594, the rule is thus nicely stated: "The purpose of the alternative judgment being to give the unsuccessful party the privilege of returning the property in satisfaction thereof with costs, it follows that such a judgment is unnecessary when the property in question is already in the possession of the successful party, when a return is not demanded, and when from special circumstances a return is manifestly impossible." And a large number of cases are cited in the note in support of the text.

In the case at bar the plaintiff is not complaining, nor could it complain, since it requested the instruction given to the effect that the plaintiff was entitled to recover the value, without mentioning a return. That might be held, we think, to constitute an election to take a money judgment only, at least where nothing to the contrary appears.

It is not disclosed that the defendant objected to the form of the judgment, nor was such an objection made in the motion for a new trial. But a conclusive answer to the objection, made here for the first time apparently, is that by the testimony of defendant it appeared that he had sold some of the cattle at different times, thereby rendering a return impossible. A useless proceeding will not be required. A judgment for a return could not possibly have been complied with, and, therefore, upon the circumstances, accepted upon the trial by both parties, a judgment for the value was sufficient. Indeed that such would be the sole result if plaintiff recovered was evidently the theory of each party as judged upon the evidence offered.

11. There is no merit in the contention that the damages assessed are excessive. The sum assessed, $1,830, included interest from the commencement of the action, a period of two years and nine months, showing quite clearly that the

cattle were valued at thirty dollars a head. There was ample evidence, though conflicting, in support of this. Several competent witnesses as to value were produced by plaintiff, not one of whom placed the value lower than thirty dollars.

For the reasons aforesaid we fail to find any reversible error in the record. The judgment will, therefore, be affirmed.                                      *Affirmed.*

BEARD, J., and MATSON, District Judge, concur.

HON. RODERICK N. MATSON, Judge of the First Judicial District, sat in place of MR. JUSTICE SCOTT, who had announced his disqualification.

### ON PETITION FOR REHEARING.

BEARD, JUSTICE.

The plaintiff in error has filed a petition for a rehearing in this case, in which it is urged that the court was in error on each and every question decided. It is contended that a chattel mortgage on co-partnership property is invalid unless the mortgage is signed by each and every member of the firm in person, and that authority to do so cannot be conferred by power of attorney. The statute requiring such mortgages to be *executed* by each member of the firm was evidently intended to limit the general agency of the members of the firm, and one of its purposes was to prohibit one member without the knowledge or consent of the others from creating specific liens upon the firm property. But we can perceive no good reason—nor has any been advanced—why such authority cannot be conferred by a proper power of attorney for that purpose as well as in at least equally important business transactions such as the encumbrance or conveyance of real estate.

It is urged with much ability and at length in counsel's brief in support of the petition for rehearing, that the record of the mortgages in this case did not constitute constructive

notice by reason of the fact that they were acknowledged before a notary who was at the time a stockholder of the corporation which was the mortgagee, and that the district court erred in refusing to permit the plaintiff in error to prove that fact on the trial. We are, and were at the time the decision in this case was handed down, aware of the conflict in the decisions upon that question. In the case before us the mortgages were valid between the parties although not acknowledged. (See paragraph 2 of the opinion.). The acknowledgments are in due form and there is nothing either upon the faces of the instruments or in the certificates of acknowledgment to indicate that the notary was a stockholder in the mortgagee corporation or had any interest in the mortgages. They were fair and regular upon their faces. They were, therefore, admissible to record for the reasons stated in the opinion, and imparted constructive notice to subsequent purchasers. In addition to the authorities cited in the opinion, see Read v. Loan Co., 68 O. St., 280; National Bank of Fredericksburg v. Conway, 17 Fed. Cases, p. 1202, Case No 10037, and Fair v. Bank, 70 Kan., 612. In the Kansas case last cited it was held that "a chattel mortgage, regular upon its face, duly filed for record, and accompanied by an affidavit of renewal, filed in proper time and regular upon its face, and regular in fact except for the latent defect that the notary public who administered the oath was a stockholder in the mortgagee corporation, imparts notice as fully as if such defect did not exist." (From syllabus by the court.) It must be remembered that we are considering a question of notice only, and not whether the acknowledgments of these mortgages (assuming that the notary was a stockholder in the bank) were sufficient proof of their execution to admit them in evidence. Their execution was otherwise proved. What we held and now hold is, that the acknowledgments being fair and regular upon their faces and there being nothing on the faces of the instruments or the certificates of acknowledgment indicating any disqualification of the notary or

that he had any interest in the mortgages, they were admissible to record and that the record imparted constructive notice to subsequent purchasers.

It is urged that "the case is one of peculiar hardship, and that the long residence and undoubted character for fair dealing and commercial integrity of the plaintiff in error, as disclosed by the records in this case, surely does not stamp him as a wrong doer or trespasser. He evidently relied upon the order of the district court and the fact that the chief executive officer of the county acted at the sale." All this may be granted, but it does not change the situation. He was bound to take notice of the fact that the court making the order of sale had no jurisdiction to do so. He took his chances on the title he acquired, and that he did so knowingly appears from the bill of sale which he introduced as evidence of his title. The bill of sale is as follows: "Albany County, Wyoming, March 11th, 1903. This is to certify that for and in consideration of the sum of twelve hundred dollars to us in hand paid, we have this day sold to N. K. Boswell all our right, title and interest in and to the cattle described in a certain bill of sale, bearing even date herewith, given by Alfred Cook, sheriff of Albany County, State of Wyoming, as receiver of the property and effects of the co-partnership of Bird Brothers to us. It is understood and agreed that we in no way guarantee the title to the cattle herein mentioned.

(Signed)                    "Harden & Hartman."

It is evident that the plaintiff in error understood that he was acquiring only and such right, title or interest in the cattle as Harden & Hartman acquired by virtue of their purchase from the receiver. That sale was held to be void for the reason that the court making the order of sale was without jurisdiction to order it. He took the chances; and because he was honestly mistaken as to the validity of the receiver's sale, is not a legal reason why he should be protected against these mortgages given to secure a valid indebtedness of Bird Brothers to the bank. The other points

presented by the petition for rehearing are so fully dis-
cussed in the opinion that we deem it unnecessary to enter
upon a further discussion of them or to repeat what is
therein stated.

The case was fully and ably presented at the hearing, both
in briefs and in oral arguments, and we have again con-
sidered the questions presented by the petition for rehearing,
but see no reason' to depart from the decision as handed
down.   A rehearing is, therefore, denied.

*Rehearing denied.*

POTTER, C. J., and MATSON, District Judge, concur.